UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
KENNETH MIDDLETON,

                    Petitioner,

        -against-                         MEMORANDUM & ORDER
                                          09-CV-5548(JS)
HANS WALKER, Superintendent of
Auburn Correctional Facility,[1]

                    Respondent.
----------------------------------X
APPEARANCES
For Petitioner:      Kenneth Middleton, pro se
                     05-A-4729
                     Green Haven Correctional Facility
                     P.O. Box 4000
                     Stormville, NY 12582

For Respondent:      Ilisa T. Fleischer, Esq.
                     Nassau County District Attorney's Office
                     262 Old Country Road
                     Mineola, NY 11501

SEYBERT, District Judge:

        Kenneth   Middleton   ("Petitioner"   or   "Middleton")

petitions this Court pro se for a writ of habeas corpus pursuant

to 28 U.S.C. § 2254.  For the following reasons, his Petition is

DENIED.

                            BACKGROUND

I.   Factual Background

        In 1999, Petitioner was stabbed in the arm and stomach

by Dante "Kamikaze" McPhaul ("McPhaul").   (Resp't's App. Br.,

_____

[1] The Clerk of the Court is directed to update the caption to
reflect the superintendent of Petitioner's current facility.

Docket Entry 15-13, at 39.)  Because McPhaul was in prison from 1999 to 2004, Petitioner could not retaliate immediately. (Resp't's App. Br. at 39.)

On June 21, 2004, Petitioner heard from friends that McPhaul had returned to Freeport, New York and McPhaul had been seen on a street that intersected with North Columbus Street. (Resp't's App. Br. at 8-9, 39.)  Petitioner rode his bicycle past a house at 53 Columbus Avenue, Freeport, New York. (Resp't's Aff., Docket Entry 15, ¶ 5.)  "[P]etitioner screamed 'Kamikaze, Kamikaze,' and fired several shots at the house, where teenagers Michael Gilliard, Ramel Graham, and Diana Correa sat on the front porch." (Resp't's Aff. ¶ 5.)  One bullet struck Gilliard in the leg; another struck Correa between the eyes and killed her. (Resp't's Aff. ¶ 5.)

On July 30, 2004, a plain-clothes police officer saw Petitioner smoking a marijuana cigarette on a street in Hempstead, New York.  (Resp't's Aff. ¶ 5; see also Resp't's App. Br. at 2.) The officer later learned that Petitioner was being sought in connection with the shootings of Correa and Gilliard in Freeport, and notified homicide detectives of Petitioner's arrest. (Resp't's App. Br. at 1.)  The detectives interviewed Petitioner and then placed him under arrest for the shootings.  (Resp't's Aff. ¶ 5.)  Petitioner was charged with Murder in the Second Degree in violation of New York Penal Law § 125.25(2), Assault in the

Second Degree in violation of New York Penal Law § 120.05(2), and Assault in the Third Degree in violation of New York Penal Law § 120.00(2). (Resp't's Aff. ¶ 6.)

II. <u>Legal Background</u>

On June 23, 2005, after a jury trial, Petitioner was convicted of the second degree murder charge as well as the second and third degree assault charges. (<u>See</u> Trial Tr., Docket Entry 15-11, at 1212:24-1213:10.) On August 12, 2005, Petitioner was sentenced to fifteen years-to-life in prison for the murder conviction; seven years in prison followed by three years of post-release supervision for the second-degree assault conviction; and one year in prison for the third degree assault conviction. (Resp't's Aff. ¶ 7.) While the sentences for the assault convictions were to run concurrently, those sentences would run consecutively with the murder conviction, resulting in a term of thirty-two years-to-life in prison. (Resp't's Aff. ¶ 7.)

Petitioner appealed the judgment to the Appellate Division, Second Department. (<u>See</u> Resp't's Aff. ¶ 8.) Petitioner argued that: (1) the trial court erred by denying Petitioner's application for a subpoena for the records of the scientific bureau; (2) his conviction on the intentional counts should be dismissed as a matter of law; (3) he was denied his constitutional right to a fair trial when the prosecutor discussed Petitioner's prior uncharged crimes and bad acts; and (4) he was denied his

fair trial rights when the prosecutor knowingly disclosed inaccurate _Rosario_ material. (Pet'r's App. Br., Docket Entry 1-2, at 2-3.) On June 3, 2008, the Appellate Division affirmed the judgment. _People v. Middleton_, 52 A.D.3d 533, 860 N.Y.S.2d 553 (2d Dep't 2008). Petitioner applied for leave to appeal to the New York Court of Appeals, which denied the application on August 7, 2008. _People v. Middleton_, 11 N.Y.3d 739, 894 N.E.2d 662, 864 N.Y.S.2d 397 (2008).

III. The Petition

Petitioner argues that he was denied his rights to: (1) confrontation under the Sixth Amendment when the trial court denied Petitioner's application for a subpoena for records of the scientific investigation bureau; (2) due process, under the Fourteenth Amendment, and a fair and impartial trial, under the Sixth Amendment, as to the jury's determination regarding Petitioner's mental state at the time of the crime; (3) due process, under the Fourteenth Amendment, and a fair and impartial trial, under the Sixth Amendment, when the prosecution discussed Petitioner's uncharged crimes and prior bad acts; (4) a fair and impartial trial, under the Sixth Amendment, when the prosecutor knowingly disclosed inaccurate _Rosario_ material, upon which the defense depended during the trial; and (5) effective assistance of counsel, under the Sixth Amendment, when Petitioner's counsel

failed to object to the trial court's jury charge. (Pet., Docket Entry 1, ¶ 12(A)-(D))[2]

DISCUSSION

I.   Legal Standard

"The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law." Harrington v. Richter --- U.S. ----, 131 S. Ct. 770, 780, 178 L. Ed. 2d 624 (2011).

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus [on] behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(a).

A federal court may grant a writ of habeas corpus to a state prisoner when prior state adjudication of the prisoner's

---

[2] Although the Petition contains five grounds, ground four does not have a letter sub-heading. (See Pet. ¶ 12(c).) Thus, the Petition contains only four letter sub-headings, (A)-(D). In addition, Petitioner did not file a supporting memorandum with the Petition. The Petition refers, however, to Petitioner's state appellate brief, as to the first four grounds. (See Pet. ¶ 12(A)-(C)) The Court has reviewed Petitioner's appellant brief as to those grounds. The Petition also presents a new ground for habeas review (not included in the state appeal), for which Petitioner did not file a supporting memorandum. (See Pet. ¶ 12(D).)

case "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." Id. § 2254(d)(1). "This is a 'difficult to meet,' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" Cullen v. Pinholster, --- U.S. ----, 131 S. Ct. 1388, 1398, 179 L. Ed. 2d 557 (2011) (citations omitted). In addition,

> [i]n all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Coleman v. Thompson, 501 U.S. 722, 750, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991) (recognizing "the important interest in finality served by state procedural rules, and the significant harm to the States that results from the failure of federal courts to respect them.").

> [F]ederal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim. . . . Thus, even when a state court says that a claim is not preserved for appellate review but then rules in any event on the merits, such a claim is procedurally defaulted.

Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005) (quoting Glenn v. Bartlett, 98 F.3d 721, 724-25 (2d Cir. 1996) (internal quotation marks and citations omitted).

During a review of a petition for a writ of habeas corpus, federal courts presume that the state court's factual determinations are correct. See 28 U.S.C. § 2254(e)(1).

II. Ground V: Ineffective Assistance of Counsel

In ground five of the Petition, Petitioner claims that "appellate counsel rendered ineffective assistance when she did not raise that trial counsel was ineffective when he failed to object to the court's erroneous submission to the jury." (Pet. ¶ 12(D).) As to this ground, Petitioner states that he "will be presenting a petition to the State Court under a post conviction motion". (Pet. ¶ 14.) As discussed below, the Court finds that Petitioner's ineffective assistance of counsel claim is unexhausted and meritless. Therefore, the Court will delete the unexhausted claim from the Petition.

A. Exhaustion

A state prisoner seeking federal habeas review of his state conviction is required to first exhaust all remedies available to him in state court. See id. § 2254(b)(1)(A). "Exhaustion requires a petitioner fairly to present the federal claim in state court." Jones v. Keane, 329 F.3d 290, 294 (2d Cir.

2003).  Presentation means a petitioner "has informed the state court of both the factual and the legal premises of the claim he asserts in federal court."  <u>Id.</u> at 295 (internal quotation marks and citations omitted).

When not all grounds have been exhausted, a petition is deemed a "mixed petition".  <u>See</u> <u>generally</u> <u>Rhines v. Weber</u>, 544 U.S. 269, 125 S. Ct. 1528, 161 L. Ed. 2d 440 (2005).  "[A] district court might stay the petition and hold it in abeyance while the petitioner returns to state court to exhaust his previously unexhausted claims.  Once the petitioner exhausts his state remedies, the district court will lift the stay and allow the petitioner to proceed in federal court."  <u>Rhines</u>, 544 U.S. at 275-76.  "[S]tay and abeyance should be available only in limited circumstances . . . . [and] is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court."  <u>Id.</u> at 277.

> [I]f a petitioner presents a district court with a mixed petition and the court determines that stay and abeyance is inappropriate, the court should allow the petitioner to delete the unexhausted claims and to proceed with the exhausted claims if dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief.

<u>Id.</u> at 278 (citing <u>Rose v. Lundy</u>, 455 U.S. 509, 520, 102 S. Ct. 1198, 71 L. Ed. 2d 379 (1982)).

B.  Ineffective Assistance of Counsel

"It has long been recognized that the right to counsel is the right to the effective assistance of counsel."  McMann v. Richardson, 397 U.S. 759, 771 n.14, 90 S. Ct. 1441, 1449 n.14, 25 L. Ed. 2d 763 (1970) (citing Reece v. Georgia, 350 U.S. 85, 90, 76 S. Ct. 167, 170, 100 L. Ed. 77 (1955); Glasser v. United States, 315 U.S. 60, 69-70, 62 S. Ct. 457, 464-65, 86 L. Ed. 680 (1942); Avery v. Alabama, 308 U.S. 444, 446, 60 S. Ct. 321, 322, 84 L. Ed. 377 (1940); Powell v. Alabama, 287 U.S. 45, 57, 53 S. Ct. 55, 59-60, 77 L. Ed. 158 (1932)).

"[T]he proper standard for attorney performance is that of reasonably effective assistance[;] . . . the defendant must show that counsel's representation fell below an objective standard of reasonableness."  Strickland v. Washington, 466 U.S. 668, 687-88, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984).  "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms."  Id. at 688.

"[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound . . . strategy."  Id. at 689 (internal quotation marks and citation omitted); see also Forbes v. United

States, 574 F.3d 101, 106 (2d Cir. 2009) (applying Strickland to appellate counsel).

C. Application

As noted supra, in ground five of the Petition, Petitioner claims that "appellate counsel rendered ineffective assistance when she did not raise that trial counsel was ineffective when he failed to object to the court's erroneous submission to the jury." (Pet. ¶ 12(D).) As to this ground, Petitioner states that he "will be presenting a petition to the State Court under a post conviction motion". (Pet. ¶ 14.) Because no state court has ruled on this ground, the ground is unexhausted for habeas review. Therefore, the Court must decide whether to dismiss the Petition, give Petitioner a "stay and abeyance," or delete the unexhausted claim and proceed with the exhausted claims.

The Court will not stay this action so that Petitioner can pursue his ineffective assistance of counsel claim. Petitioner's claim is meritless. As Respondent aptly notes, "it is ironic that [P]etitioner attacks [his] appellate counsel even as his current application otherwise consists entirely of a restatement--with no elaboration whatsoever--of each of the four claims she made on his behalf." (Resp't's Opp. Br., Docket Entry 15, at 29.) The Court concurs. Petitioner presents no evidence that would overcome the presumption that Petitioner's appellate

counsel performed reasonably.  The Court will therefore delete the unexhausted claim and proceed to review the exhausted claims.

III. <u>Ground One: Confrontation Clause</u>

In ground one of the Petition, Petitioner claims that the trial court "erred in denying [his] application for a subpeona [sic] for the records of the scientific investigation bureau" relating to the marijuana cigarette that led to his arrest on July 30, 2004.  (Pet. ¶ 12(A).)  Because the trial court "preclude[d Petitioner] from obtaining the records" (the "SIB Report"), Petitioner contends, "counsel could not argue that there had been no evidence that the blunt had been lit according to the observations of those who examined the evidence."  (Pet'r's App. Br. at 20.)  Petitioner further argues that the SIB Report could "cast doubt on the veracity of [the arresting officer's] testimony, and obviously therefore, on the existence of probable cause" as to Petitioner's warrantless arrest.  (<u>See</u> Pet'r's App. Br. at 20.) The Court disagrees with Petitioner.

The trial court denied Petitioner's request to subpoena the SIB Report because the SIB Report was a collateral matter. (Pet'r's App. Br. at 20.)  "The general rule is that a party may not introduce extrinsic evidence on a collateral matter solely to impeach credibility."  <u>People v. Alvino</u>, 71 N.Y.2d 233, 247-48, 519 N.E.2d 808, 816, 525 N.Y.S.2d 7, 16 (1987) (citing <u>People v Harris</u>, 57 N.Y.2d 335, 345, 442 N.E.2d 1205, 456 N.Y.S.2d 694

(1982)). "Whether the exclusion of [witness] testimony violated [Petitioner's] right to present a defense depends upon whether 'the omitted evidence [evaluated in the context of the entire record] creates a reasonable doubt that did not otherwise exist.'" Justice v. Hoke, 90 F.3d 43, 47 (2d Cir. 1996) (alteration in original) (quoting United States v. Agurs, 427 U.S. 97, 112, 96 S. Ct. 2392, 2402, 49 L. Ed. 2d 342 (1976)). "[E]vidence of a witness' bias must be competent to be admissible, and the trial court has broad discretion to curtail exploration of collateral matters." Id. at 48 (quoting People v. Hudy, 73 N.Y.2d 40, 56, 535 N.E.2d 250, 538 N.Y.S.2d 197 (1988)). "Nevertheless, 'extrinsic proof tending to establish a reason to fabricate is never collateral and may not be excluded on that ground.'" Id. (citation omitted) (emphasis added); see also United States v. James, 609 F.2d 36, 46 (2d Cir. 1979) ("'[B]ias of a witness is not a collateral issue and extrinsic evidence is admissible to prove that a witness has a motive to testify falsely.'") (quoting United States v. Harvey, 547 F.2d 720, 722 (2d Cir. 1976) (emphasis added))).

As Petitioner intended to introduce the SIB Report to impeach the credibility of the arresting officer, the trial court was well within its right to deny Petitioner's motion. See Alvino, 71 N.Y.2d at 247-48. The SIB Report was not intended to provide an explanation why the arresting officer was incorrect in his

assessment that Petitioner was smoking the marijuana cigarette when he was arrested, i.e., Petitioner did not seek it to establish a reason or motive for the officer's allegedly false testimony. See Hoke, 90 F.3d at 48; James, 609 F.2d at 46. Rather, the SIB was simply meant to cast doubt on the officer's veracity as to the probable cause to arrest. The trial court clearly had the discretion to label the issue as a collateral matter and to deny the motion.

Moreover, there is no evidence that Petitioner's trial counsel was unable, due to the trial court's decision, to argue the cigarette was unlit. Indeed, as Respondent correctly argued in its appellate brief, "notwithstanding the ruling, [Petitioner] could--and did--argue that there was no evidence that the [cigarette] was ever lit." (Resp't's App. Br. at 34.) Petitioner was not denied, therefore, his constitutional right to confront, especially since there is no evidence the SIB Report would have confirmed or strengthened Petitioner's allegation.

Finally, Petitioner's trial counsel did not request an adjournment to subpoena the SIB Report until his suppression hearing was well underway, even though the sole basis for the arresting officer's warrantless arrest was the burning marijuana cigarette. Counsel's mid-hearing request would have slowed the proceedings, and the trial court has control over trial scheduling matters. Drake v. Portuondo, 321 F.3d 338, 344 (2d Cir. 2003)

("Scheduling is a matter that is of necessity committed to the sound discretion of the trial court."). As to habeas review of trial scheduling matters, "[o]nly an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the [Constitution]." Id. (quoting Morris v. Slappy, 461 U.S. 1, 12, 103 S. Ct. 1610, 1616, 75 L. Ed. 2d 610 (1983)). There is no evidence the trial court's decision was "unreasoning and arbitrary" rather than a valid exercise of its scheduling powers. Id. at 11.

The Appellate Division held Petitioner's claim was "without merit." Middleton, 52 A.D.3d at 534. For the reasons stated above, the Court concurs. The Appellate Division's holding was not contrary to, or an unreasonable application of, Federal law. 28 U.S.C. § 2254(d)(1). The Court DENIES Petitioner's claim on this ground.

IV. Ground Two: Sufficiency of Evidence

In ground two of the Petition, Petitioner argues (1) that there was insufficient evidence to support Petitioner's conviction for intentional murder and (2) that the jury's conclusion that Petitioner was guilty of both intentional murder and reckless assault with respect to the same act or occurrence was "internally inconsistent and repugnant." (Pet'r's App. Br. at 34.)

A.   Unpreserved Claims

As an initial matter, Respondent argues that the Court cannot review Petitioner's jury verdict because the Appellate Division ruled that the claim was unpreserved for appellate review. (See Resp't's App. Br. at 34-36; see also Middleton, 52 A.D.3d at 534). While the state court did hold the claim was unpreserved, the United States Supreme Court permits this Court to review the claim if Petitioner "demonstrate[s] that [the] failure to consider the claim[] will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750. While Petitioner, filing pro se, does not explicitly demonstrate as such, there can be no doubt that if the jury's determination was found to be legally unjustifiable, Petitioner's 25-years-to-life prison sentence (for the murder charge) would surely be a miscarriage of justice. Moreover, "where the petitioner[] [is] pro se, the district court 'should review habeas petitions with a lenient eye, allowing borderline cases to proceed.'" Cuadra v. Sullivan, 837 F.2d 56, 58-59 (2d Cir. 1988) (quoting Williams v. Kullman, 722 F.2d 1048, 1050 (2d Cir. 1983), as to summary dismissals of habeas petitions). For that specific reason, the Court will substantively review this claim.

B.   Sufficiency of the Evidence

The Due Process Clause of the Fourteenth Amendment prohibits conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which [the

defendant] is charged." *In re Winship,* 397 U.S. 358, 364, 90 S. Ct. 1068, 1073, 25 L. Ed. 2d 368 (1970). The Court "review[s] the decision of the state court under the federal sufficiency standard set forth by the Supreme Court in *Jackson v. Virginia,* 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)." *Gutierrez v. Smith,* 702 F.3d 103, 113 (2d Cir. 2012) (citing *Epps v. Poole,* 687 F.3d 46, 50 (2d Cir. 2012)). "The relevant question under *Jackson* is whether, 'after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (citing *Jackson,* 443 U.S. at 319) (emphasis in original). Further, the Court "'must look to state law to determine the elements of the crime.'" *Id.* (quoting *Fama v. Comm'r of Corr. Servs.,* 235 F.3d 804, 811 (2d Cir. 2000)).

"A person is guilty of murder in the second degree when: 1. With intent to cause the death of another person, he causes the death of such person <u>or of a third person</u>[.]" N.Y. PEN. LAW § 125.25 ("Murder in the Second Degree") (emphasis added). As Respondent argued in its State appellate brief, "the evidence amply supported the jury's conclusion that [Petitioner] was acting with intent to kill . . . his enemy, Dante 'Kamikaze' McPhaul." (Resp't's App. Br. at 38.) In this case, the jury reasonably concluded that while Petitioner intended to kill McPhaul, he killed Diana Correa. After reviewing the operative state law and looking

at the evidence in the light most favorable to the prosecution, the Court DENIES Petitioner's claim on this ground. Moreover, to the extent that Petitioner contends that the jury's conclusion that Petitioner was guilty of both intentional murder and reckless assault with respect to the same act or occurrence was "internally inconsistent and repugnant," it is well settled that "an allegedly inconsistent verdict does not present a constitutional violation" upon which federal habeas corpus relief may be granted. Muldrow v. Herbert, 299 F. Supp. 2d 166, 170 (W.D.N.Y. 2004); accord Williams v. Artuz, No. 98-CV-7964, 2002 WL 989529, at *8 (S.D.N.Y. May 15, 2002) ("A claim of inconsistent or repugnant verdicts presents no issue upon which federal habeas corpus relief could be granted."). Accordingly, the Court DENIES the Petition on this ground as well.

V.   Ground Three: Comments on Prior Bad Acts

In ground three of the Petition, Petitioner argues that he was denied his constitutional rights when the prosecution commented upon uncharged crimes during the opening statement. (Pet'r's App. Br. at 38.) The Court disagrees with Petitioner.

Petitioner must demonstrate that "the erroneously admitted evidence, viewed objectively in light of the entire record before the jury, was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it. In short it must have been

'crucial, critical, [and] highly significant[.]'" Collins v.
Scully, 755 F.2d 16, 19 (2d Cir. 1985) (quoting Nettles v.
Wainwright, 677 F.2d 410, 414-15 (5th Cir. 1982)).

A trial court "has broad discretion regarding the
admissibility of evidence. Its rulings will be disturbed only for
an abuse of that discretion." United States v. Walker, 142 F.3d
103, 110 (2d Cir. 1998) (citing United States v. Wong, 40 F.3d
1347, 1378 (2d Cir. 1994)); see also Larson v. Palmateer, 515 F.3d
1057, 1065 (9th Cir. 2008) (as to questions of admissibility of
evidence in habeas petitions, the only question the court must
determine is "whether the trial court's failure to
exclude . . . 'rendered the trial so fundamentally unfair as to
violate due process.'" (quoting Windham v. Merkle, 163 F.3d 1092,
1103 (9th Cir. 1998)).

The Appellate Division held that "the prosecutor did not
improperly comment on [Petitioner's] prior bad acts in his opening
statement, as the challenged comments provided necessary
background information." Middleton, 52 A.D.3d at 534. Petitioner
fails to overcome this Court's presumption that the trial court
did not abuse its discretion as to the prosecutor's opening
statement. The challenged statements were necessary to help
establish that Petitioner had a motive to kill McPhaul. (See,
e.g., Trial Tr. 334:1-3, Docket Entry 15-4.) Moreover, the trial
court explicitly told the prosecutor that the prosecutor would not

be permitted to discuss Petitioner's prior arrests or his stint in juvenile detention, i.e., Petitioner's uncharged crimes and bad acts. (See Trial Tr. 333:20-25.) Finally, the prosecutor's challenged statements did not discuss Petitioner's bad acts; rather, he discussed McPhaul's bad acts (robbing Petitioner's friends) and, implicitly, Petitioner's friends' bad acts (they possessed crack cocaine, which was stolen from them). (See Trial Tr. 332:8-10.) The prosecutor did not implicate Petitioner therein and any "second degree implication" (Petitioner's friends had crack cocaine, therefore Petitioner associates with criminals) is baseless as to this review. By permitting the statements, the trial court did not render the trial fundamentally unfair, and thus, did not violate Petitioner's due process rights. See Palmateer, 515 F.3d 1065. The Court DENIES Petitioner's claim as to these statements.

Lastly, as to Petitioner's contention regarding other testimony and admitted evidence, the Appellate Division held that such claims were unpreserved and without merit. Middleton, 52 A.D.3d at 534. The Court holds, in accordance with Coleman, that these claims are unreviewable. As to this claim, the Court holds there is no miscarriage of justice by not substantively reviewing

them.[3]  Coleman, 501 U.S. at 750.  The Court DENIES Petitioner's
claim.

## VI.  Ground Four: Rosario Violation

Finally, in ground four of the Petition, Petitioner
claims that the prosecution knowingly turned over false and
inaccurate material to his trial counsel in violation of People v.
Rosario, 9 N.Y.2d 286, 173 N.E.2d 881, 213 N.Y.S.2d 448 (1961).
(Pet. ¶ 12(C).)  As discussed below, Petitioner's claim arises
solely under New York statutory law, and thus, is not reviewable
for habeas purposes.

"[T]he prosecutor shall . . . make available to the
defendant: (a) [a]ny written or recorded statement . . . made by
a person whom the prosecutor intends to call as a witness at
trial . . . ."  N.Y. CRIM. PROC. LAW § 240.45(1) (codifying Rosario, 9
N.Y.2d 286, 173 N.E.2d 881, 213 N.Y.S.2d 448).  Moreover, the
prosecution  is  "not  obligated  to  correct  inaccuracies
in Rosario material."  People v. Lugo, 227 A.D.2d 247, 642 N.Y.S.2d
650 (1st Dep't 1996).

---

[3] In his appellate brief, Petitioner argues "the prosecutor's
blatant use of what constituted uncharged crimes and suggestions
that appellant was a member of a gang which sold drugs so
prejudiced appellant as to deprive him of a fair trial."
Pet'r's App. Br. at 39.)  The Court holds Petitioner does not
demonstrate how this admission influenced the jury to find that:
(i) Petitioner intended to murder McPhaul, (ii) murdered Correa,
and (iii) was guilty of assault.

The United States Supreme Court has "stated many times that 'federal habeas corpus relief does not lie for errors of state law.'" Estelle v. McGuire, 502 U.S. 62, 67, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991) (citing Lewis v. Jeffers, 497 U.S. 764, 780, 110 S. Ct. 3092, 3102, 111 L. Ed. 2d 606 (1990); Pulley v. Harris, 465 U.S. 37, 41, 104 S. Ct. 871, 874-75, 79 L. Ed. 2d 29 (1984)). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Id. at 67-68 (citing 28 U.S.C. § 2241; Rose v. Hodges, 423 U.S. 19, 21, 96 S. Ct. 175, 177, 46 L. Ed. 2d 162 (1975) (per curiam)).

"A federal habeas court will not review a claim rejected by a state court 'if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" Beard v. Kindler, 558 U.S. 53, 55, 130 S. Ct. 612, 175 L. Ed. 2d 417 (2009) (quoting Coleman, 501 U.S. at 729). "This rule applies whether the state law ground is substantive or procedural." Coleman, 501 U.S. at 729.

During the trial, the prosecutor provided a copy of a written review ("262 Report") of an interview between Detective William Brosnan and McPhaul. (Resp't's App. Br. at 56.) The 262

Report said that McPhaul met the description of the shooter at issue in the underlying case.  (See Trial Tr. at 844:3-6, Docket Entry 15-8.)  During trial cross-examination, Detective Brosnan stated that this was a typo--it should have read that McPhaul did not meet the description of the shooter.  (See Trial Tr. at 844:6-8; Trial Tr. at 827:1-2.)

Brosnan noticed the mistake while reviewing the 262 Report in preparation for his testimony.  (See Trial Tr. 844:13-15.)  Though he noticed the mistake, Brosnan stated that he "would not make any corrections to any paperwork after [he] had already submitted it for Rosario [purposes]."  (Trial Tr. at 844:17-20.)

Petitioner claims this inaccurate 262 Report (McPhaul matching the shooter's description) spurred Petitioner's trial counsel to intend to prove that McPhaul was the shooter, not Petitioner, a defense that proved unworkable when Brosnan said the 262 Report contained the mistake.  Because he had not been provided a corrected 262 Report, Petitioner was denied, he argues, a fair trial.  (See Pet'r's App. Br. at 44-52.)

Petitioner's claim arises solely under New York statutory law and, thus, it is not reviewable for habeas purposes.  Estelle, 502 U.S. at 67-68.  Moreover, the prosecution is "not obligated to correct inaccuracies in Rosario material."  Lugo, 227 A.D.2d at 247, 642 N.Y.S.2d at 651.  Similarly, there is no constitutional right to gain access to written material that

contains no mistakes.  Accordingly, the Court DENIES Petitioner's claim.

CONCLUSION

For the reasons set forth above, Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is DENIED.  Because there can be no debate among reasonable jurists that Petitioner was entitled to habeas relief, the Court does not issue a Certificate of Appealability.  28 U.S.C. § 2253(c); see also Middleton v. Att'ys Gen., 396 F.3d 207, 209 (2d Cir. 2005).

The Clerk of the Court is directed to mail a copy of this Memorandum and Order to the pro se Petitioner and to mark this matter CLOSED.

SO ORDERED.


/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:    May   27  , 2014
          Central Islip, NY